**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL NO. 3:06CV512-H**

| | | |
|---|---|---|
| **GERARD ECKHARDT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| **BANK OF AMERICA, N.A.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on the Plaintiff's "Motion to Compel Defendant to Respond to Plaintiff's First Set of Interrogatories and Request for Production of Documents" (document #19) and "Brief in Support ..." (Document #19-2), both filed November 21, 2007; and the Defendant's "Memorandum ... in Opposition ... " (document #22) filed December 10, 2007. On December 27, 2007, the Plaintiff filed his "Reply ..." (document #25).

The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and this motion is now ripe for disposition.

Having fully considered the arguments, the record, and the applicable authority, the Court will grant in part and deny in part the Plaintiff's Motion, as discussed below.

## I. FACTUAL AND PROCEDURAL HISTORY

This is an action seeking damages and declaratory relief for disability discrimination in violation of the Americans with Disabilities Act ("the ADA") 42 U.S.C. § 12112, et. seq., and state common law and public policy. The Plaintiff, Gerard Eckhardt, is a Charlotte, North Carolina resident, who following a 1979 automobile accident is a quadriplegic confined to a wheel chair. The

Defendant, Bank of America, N.A., is a Delaware corporation doing business in North Carolina.

Accepting the allegations of the Complaint as true, in November 1996, the Defendant hired the Plaintiff as a Programmer Analyst. During his tenure with the Defendant, the Plaintiff never received a disciplinary notice, but rather, consistently received favorable reviews, raises, and bonuses.

Sometime in the fourth quarter of 2000, the Plaintiff was promoted to "Team Leader Application Programming," where he supervised four employees in the Global Business Financial Services Department ("the Development Team"), a small unit consisting of only 12 individuals.

In February 2004, however, one of the Defendant's Project Managers, Jon Dowell, promoted Lisa Terranova to Application Manager and removed the Plaintiff's team lead responsibilities. The Plaintiff alleges that he was demoted to the position of Consultant Applications Programmer, a position roughly parallel to those held by Yolanda Gammon and Walter Terry, his former subordinates.

The Plaintiff contends that according to an organizational chart produced by the Defendant, following Ms. Terranova's promotion and his demotion, the Development Team was organized as follows: the overall manager was Mary Ellen Statland, a Senior Technology Manager, who directly supervised four Project Managers: Tom Anderson, Troy Burgessor, Michelle Krause and Mr. Dowell. As Application Manager, Ms. Terranova reported to Ms. Krause. According to the chart, Ms. Terranova in turn had six individuals reporting to her: the Plaintiff, Jeffrey Sparks, Robin Siegner, Les Dailey, Ms. Gammon, and Mr. Terry.

The Plaintiff also alleges that despite performing his new position well, on June 29, 2005, he was summoned to a meeting with Ms. Krause and Ms. Statland, who informed him that his job

was being eliminated as part of a cost reduction.

The Plaintiff contends that Ms. Statland informed him that the reason his position was being eliminated was that a recent software release had taken a "physical toll on [the Plaintiff]," that "[the Plaintiff] had some recent health issues," and that the elimination of his current position would "allow [the Plaintiff] to find something less demanding such as a business analyst position." "Complaint" at 7 (document 1-2). Ms. Statland also informed the Plaintiff that he would receive a severance package, that he could apply for other positions with the Defendant, and that he would have 60 days to find a new position. The Plaintiff alleges that other members of the Development Team, Mr. Burgessor, Ms. Siegner, Ms. Gammon and Mr. Terry, had "performance and/or disciplinary problems" and were, therefore, more suitable candidates for a lay-off.

Concerning Mr. Burgessor, Ms. Krause testified at her deposition that she "honestly did not get a lot out of [him]" and it is undisputed that Mr. Burgessor was removed from the Development Team within a few weeks of the elimination of the Plaintiff's position. Mr. Burgessor's former position was not eliminated, however, and the Plaintiff alleges that he was qualified for that position.

On August 31, 2005, the Plaintiff filed an internal administrative grievance, which was denied, and on that date or shortly thereafter, he was terminated.

The Plaintiff alleges that the only other member of the Development Team included in the lay-off, Jeff Sparks, who is not disabled, was allowed a 90-day period to locate a new position and was re-hired.

The Defendant does not dispute that the Plaintiff filed a timely administrative charge with the Equal Employment Opportunity Commission ("EEOC"), contending that the lay-off was actually a discriminatory discharge based on his disability or the Defendant's perception of his disability.

The Plaintiff contends that in response to his EEOC charge and despite the fact he had been demoted from a team lead position more than a year earlier, the Defendant stated that the Plaintiff was laid off as part of the consolidation of three team lead positions on the Development Team into one team lead position.

On October 6, 2006, and after receiving what is commonly referred to as a "right to sue" letter from the EEOC, the Plaintiff timely filed his Complaint in the Superior Court of Mecklenburg County, alleging claims for wrongful termination in violation of the ADA and North Carolina public policy, as well as a common law claim for negligent infliction of emotional distress.

On December 15, 2006, the Defendant removed the state action to federal court alleging federal question jurisdiction. Said removal has not been challenged and appears proper.

On February 8, 2007, the Plaintiff served his "First Set of Interrogatories and Request for Production of Documents." In relevant part, the Plaintiff's initial discovery requests included the following:

> **Interrogatory 2:** Identify all persons who worked (whether as a contractor, intern or permanent employee) in the Development Team from 2000 to the present.
>
> **Interrogatory 3:** For the individuals identified in the above interrogatory, further identify whether and to what extent they were ever disciplined, including but not limited to: the date of the discipline; the nature and extent of the discipline (i.e., oral reprimand, final warning, probation, suspension, termination), a description of any written documentation prepared regarding the incident; and the identity of the individual(s) (if any) who were consulted or had input in the decision.
>
> **Interrogatory 7:** Identify the computers or laptops used by Michelle Krause, Mary Ellen Statland and any other individuals identified in Interrogatory No. 4 for calendar year 2004 to the present, including but not limited to: the respective make and model numbers: the present exact location of those computers; whether any data erasing or scrubbing software was utilized on the them; and (if they are no longer in the Bank's possession) an explanation of what happened to the them (i.e., were they destroyed, sold, donated and if so to whom?), when it happened, and whether, where and by

whom a backup of the hard drive was made.

**Interrogatory 17:** Identify any documents responsive to Plaintiff's document requests served contemporaneously herewith which have been destroyed, no longer exist or are otherwise unavailable, including, but not limited to the author of the document, how the document was created (i.e., fax, email, word processing, computer), the reason the document no longer exists, the date it became unavailable and whether the document was forwarded or communicated to a third party, the date of the communication and the identity of the person to whom the communication was made.

**Document Request 2:** All organizational charts or other similar documents for the Commercial Risk Technology Group, Enterprise Credit Group and any department or group caused by the alleged merger of those two groups for each point in time during Mr. Eckhardt's employment.

**Document Request 7:** All documents relating to the alleged decision to look at current staffing levels in the Development Team and to determine if the functions could be combined and handled by fewer associates as stated in p. 2 of the Bank's position letter to the EEOC dated December 1, 2005, including but not limited to power point presentations, time sheets, job descriptions, evaluations, budgets, projections, personnel files, recommendations, reports and plans

**Document Request 8:** All documents reviewed by and/or relied upon by Ms. Statland or Ms. Krause (or any one else identified in Interrogatory Request No. 4) in deciding whom to select for the layoff affecting Mr. Eckhardt and Mr. Sparks, including but not limited to power point presentations, time sheets, job descriptions, evaluations, budgets, projections, personnel files, recommendations, reports and plans.

**Document Request 9:** All documents relating to the budget for the Development Team and the budget(s) for any OCE business partner(s) which were considered, or affected positively or negatively by Mr. Eckhardt's layoff from January 2004 through the present.

**Document Request 10:** All documents relating to Troy Burgessor's work for and departure from the Development Team, including but not limited to timesheets, the job requisitions, job descriptions, and transfer documents.

**Document Request 20:** All documents relating to any job openings, job postings or job requisitions in the Development Team from January 2005 to the present (such as the job requisition which was posted and then pulled for alleged budgetary reasons, a project manager position, technical deliver manager position, Lisa Terranova's

previous position and Yolanda Gammon's previous position) including but not limited to: the job requisition itself, job application, resumes or similar materials from candidates, documents relating to the decision to rescind the requisition (if any), including emails and documents showing the alleged budgetary reasons for not filling the position.

**Document Request 22:** Documents relating to the two positions discussed in the Bank's position letter to the EEOC dated December 1, 2005 (Consultant-Bus/Sys Integration and Sr. Consultant – Apps Programming) including the job requisitions, resumes, applications, interview notes, emails or instant messages; and any documents substantiating or contradicting the claim that those positions were closed due to budgetary constraints.

**Document Request 26:** The personnel files for Mr. Eckhardt, Jeff Sparks, Lisa Terranova, Ms. Statland, Ms. Krause, Tom Anderson, Troy Burgessor, Yolanda Gammon, Robin Siegner, Walter Terry and Les Daily.

**Document Request 27:** All annual, bi-annual or quarterly evaluations for all current or former employees in the Development Team.

**Document Request 28:** All documents relating to bonuses, stock options and/or awards for any former or current employees in the Development Team.

**Document Request 29:** All documents relating in any way to discipline issued to (or other negative action taken against) former or current employees in the Development Team, including but not limited to: warnings, reprimands, performance improvement plans, action plans, last chance agreements, disciplinary notices, demotions, transfers, removal of duties and memoranda-to-file.

**Document Request 31:** All documents relating to Robin Siegner's instant messages or emails regarding Mr. Eckhardt and specifically instant messaging wishing harm or death on Mr. Eckhardt, including but not limited to any ensuing investigation or response by the Bank, Ms. Terranova or Ms. Krause.

**Document Request 32:** All documents relating to the removal or reassignment of job duties (such as programming assignments) from Walter Terry or Yolanda Gammon, including but not limited to any ensuing investigation or response by Human Resources or Ms. Krause.

**Document Request 33:** All documents relating to inappropriate or unprofessional conduct by Yolanda Gammon as well as any ensuing investigation or response by the Bank, including but not limited to an incident where Ms. Gammon physically confronted or otherwise acted inappropriately or unprofessionally toward Lisa

Terranova.

> **Document Request 34:** 2005 calendars, appointment, date books or organizers (electronic or hardcopy) for Ms. Statland, Ms. Krause, Daniel Globerson, Tom Anderson and any other individuals involved in the decision to select Mr. Eckhardt for layoff and/or to not otherwise extend Mr. Eckhardt's employment.

On April 2, 2007, the Defendant responded to the Plaintiff's discovery requests. On July 17, 2007, Plaintiff's counsel wrote defense counsel identifying numerous alleged deficiencies in the Defendant's responses. On August 24, 2007, Defendant responded by letter in which it disputed most of the Plaintiff's complaints, but on October 1, 2007, the Defendant made what the Plaintiff characterizes as a "modest" supplemental response.

Concerning the items which were still unresolved, on November 21, 2007 the Plaintiff filed the subject Motion to Compel, which as fully briefed by the parties presents the following issues:

(1) The Defendant has limited its responses to Interrogatory 3 and Document Requests 10, 27-29 and 32-33 to the individuals it labels as the Plaintiff's only "comparators": Mr. Sparks and Ms. Terranova. Concerning Document Request 26, the Defendant has produced only selected documents from the Development Team members' personnel files. The Plaintiff seeks an order compelling full supplemental responses as to all of the 11 other members (besides himself) of the Development Team, including each team member's full personnel file. The Plaintiff states that he will abide by any Protective Order that is entered to ensure the confidentiality of the later documents.

(2) The Defendant has responded to the Plaintiff's Interrogatory 17 and Document Requests 7-9, 20, 22 and 34 by identifying and producing certain responsive documents and stating that it does not possess any other responsive documents. In his Reply, the Plaintiff points out, however, that after the Defendant made its responses to the Plaintiff's written discovery, Ms. Krause, Ms.

Terranova, and Ms. Statland testified at their respective depositions and identified other responsive documents that have not yet been produced, including documents that establish poor performance by Mr. Terry, Ms. Gammon, and/or Ms. Siegner. The Plaintiff requests that the Defendant be required to conduct an additional search for responsive documents, and if no additional documents are located, to identify any documents that have been destroyed and to state whether any of these otherwise unavailable documents might be retrievable from back up media or another source.

(3) In response to Interrogatory 2 (identification of all contractors, interns or employees on the Development Team from 2000 to present), the Defendant identified only individuals who were part of the Developmental Team in or after 2004.

(4) The Defendant objected to Interrogatory 7 (identification of the computers used by Ms. Statland, Ms. Krause and any other person the Defendant identifies as a "decision maker" in the Plaintiff's termination) on the grounds that this request is irrelevant and not calculated to lead to the discovery of admissible evidence.

The Plaintiff's Motions has been fully briefed as set forth above and are therefore ripe for disposition.

## II. DISCUSSION

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

The rules of discovery are to be accorded broad and liberal construction. See Herbert v.

Lando, 441 U.S. 153, 177 (1979); and Hickman v. Taylor, 329 U.S. 495, 507 (1947). However, a litigant is not entitled to conduct discovery that is intended to harass, annoy, embarrass, or oppress the opposing party. See Fed. R. Civ. P. 26(c).

Whether to grant or deny a motion to compel is generally left within the district court's broad discretion. See, e.g., Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995) (district courts' rulings on discovery motions reviewed on appeal for abuse of discretion); Erdmann v. Preferred Research Inc., 852 F.2d 788, 792 (4th Cir. 1988) (noting district court's substantial discretion in resolving motions to compel); and LaRouche v. National Broadcasting Co., 780 F.2d 1134, 1139 (4th Cir. 1986) (same).

It is also well settled that a party has a duty to preserve evidence when the party is placed on notice that the evidence is relevant to the litigation or when the party should have known that the evidence may be relevant to future litigation. Silvestri v. GMC, 271 F. 3d 583, 591 (4th Cir. 2001). The duty to preserve encompasses electronic communications and documents, such as emails, or documents created by computer, such as invoices. See Zubulake v. UBS Warburg, LLC, 220 F.R.D. 212, 217-18 (S.D.N.Y. 2003) (holding in employment discrimination case that defendant company had duty to preserve emails related to claims asserted by plaintiff, and ultimately requiring defendant to restore 77 backup disks in order to search for and produce those emails). In other words, "once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place 'a litigation hold' to ensure the preservation of relevant documents." Zubulake, 220 F.R.D. at 218. Accord Thompson v. United States Dept. of Housing and Urban Development, 219 F.R.D. 93, 100 (D. Md. 2003) (party had duty not to delete responsive emails, discovery requests for deleted emails were proper).

Applying these legal principles to the record in this case, particularly where the Plaintiff credibly argues that deposition testimony has identified responsive but unproduced documents, the undersigned will require the Defendant to certify that it has throughly searched for all documents responsive to Interrogatory 17 and Document Requests 7-9, 20, 22 and 34, and to identify any documents or sets of documents (for example, "responsive documents that were located on the hard drive of the computer used by Employee X") that were deleted, erased, or otherwise destroyed. Although the Court will not require the Defendant, at this point in the proceeding, to resort to expensive restoration of backup media, the Defendant must further certify what otherwise responsive but not readily accessible documents might be retained in archive form, on backup tapes/discs, or on any other backup media.

For the same reason, that is, because the Plaintiff had made a credible showing through the depositions of Ms. Statland, Ms. Krause, and Ms. Terranova of the earlier existence of responsive documents which the Defendant now contends it does not possess, the Defendant will also be required to respond to Interrogatory 7 and fully identify the computers used by its decision makers in the Plaintiff's termination.

Concerning the parties' central dispute, whether the Defendant may in most instances limit its discovery responses to those related to Mr. Sparks and Ms. Terranova, the undersigned has carefully reviewed the above-quoted discovery requests and concludes that they are reasonably calculated to lead to the discovery of admissible evidence. Moreover, given the small size of the Development Team, general discovery as to each team member is appropriate.[1] Accordingly, the

---

[1]Although recognizing that unpublished decisions have no precedential value in other cases, the undersigned has permitted broad discovery in similar cases. See, e.g., Ferry v. BJ's Wholesale Club, 2007 WL 529958, at 2-3 (W.D.N.C. Feb 14, 2007) (ordering defendant to produce personnel files of plaintiff's co-team

Defendant's objection to responding to Interrogatory 3 and Document Requests 10, 27-29 and 32-33 other than as to Mr. Sparks and Mas. Terranova is overruled and the Defendant will be compelled to make full supplemental responses to those requests.

As quoted above, Document Request 26 seeks the personnel files of all members of the Development Team. Although not covered by a per se privilege, the undersigned notes that there is a strong public policy against the public disclosure of personnel files. See Blount v. Wake Elec. Membership Corp., 162 F.R.D. 102, 105-06 (E.D.N.C. 1993) ("It cannot be denied that personal privacy and accurate employee evaluations are important public policy concerns.") However, where the files sought are those of employees whose action or inaction has a direct bearing on the Plaintiff's claims or Defendant's affirmative defenses and especially where, as here, the Court will enter an appropriate protective order prior to disclosure, personnel files are subject to discovery. Accord Johnson v. Morris, 903 F.2d 996, 998 (4th Cir. 1990) (pursuant to a protective order, defendant's investigative file and the personnel files of all employees who supplied information during the investigation were produced.); Pitrolo v. County of Buncombe, ___ F. Supp. 2d. ___, ___ (W.D.N.C. April 4, 2007) (requiring production of personnel files of all comparators); Blount, 162 F.R.D. at 105-06 (ordering production of personnel files of employees directly implicated by plaintiff because the files contained information which was "clearly relevant" and not otherwise readily available); and Cason v. Builders Firstsource-Southeast Group, Inc., 159 F.Supp.2d 242, 248 (W.D.N.C. 2001) (requiring production of personnel files of decision makers).

---

members and person who replaced plaintiff, and permitting general discovery of all persons holding job title that plaintiff allegedly had been offered as an alternative to termination); Johnson v. Mechanics and Farmers Bank, 2006 WL 3207320, at 5 (W.D.N.C. Nov. 3, 2006) (ordering defendant to produce personnel files of co-executives, the individuals who replaced plaintiff, and plaintiff's subordinates)

Applying these principles, the Court concludes that the Plaintiff is entitled to the production of the personnel files of all of the members of the Development Team except Mr. Anderson. Indeed, both Ms. Statland and Ms. Krause were decision makers in the Defendant's decision to eliminate the Plaintiff's position. Mr. Dowell allegedly made the earlier decision to demote the Plaintiff and promote Ms. Terranova in his stead. The Defendant's organizational chart shows that Mr. Sparks, Ms. Siegner, Mr. Dailey, Ms. Gammon, and Mr. Terry held comparable positions at the time the Plaintiff's position was eliminated. Finally, Ms. Krause's admission that she "did not get a lot out of" Mr. Burgessor raises an inference that Mr. Burgessor was a more suitable candidate for the lay-off than the Plaintiff.

Concerning Mr. Anderson, however, the record is silent other than stating merely that he was a member of the Development Team. Accordingly, the Plaintiff's Motion to Compel production of his personnel file will be denied without prejudice to the Plaintiff's right to renew his Motion should the Defendant's supplemental responses otherwise reveal that Mr. Anderson's actions or inaction had a direct bearing on the Plaintiff's claims.

Finally, the Defendant is not entitled to limit its response to Interrogatory 2 (seeking identification of all members of the Development Team from 2000 forward) to individuals who were part of the Developmental Team in or after 2004. The Plaintiff joined the Development Team in 2000, and any member of the team from that time through the Plaintiff's termination could possess relevant information, including evidence material to the Plaintiff's job performance and his qualifications vis-a-vis other team members whose positions were not eliminated.

## III. ORDER

**NOW, THEREFORE, IT IS ORDERED:**

1. The Plaintiff's "Motion to Compel Defendant to Respond to Plaintiff's First Set of Interrogatories and Request for Production of Documents" (document #19) is **GRANTED IN PART** and **DENIED IN PART**, that is:

A. On or before 30 days from the entry of the Protective Order discussed below, the Defendant shall make full and complete supplemental responses to Interrogatories 2, 3, 7, and 17 and to Document Requests 7-10, 20, 22, 27-29 and 32-34, provided that production of personnel files shall be limited at this time to Mary Ellen Statland, Troy Burgessor, Michelle Krause, Jon Dowell, Lisa Terranova, Jeffrey Sparks, Robin Siegner, Les Dailey, Yolanda Gammon, and Walter Terry.[2]

B. The Plaintiff's Motion is **DENIED** in all other respects.

C. The parties' respective counsel shall promptly discuss and prepare a Consent Protective Order and submit the same to the undersigned for signature.

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED**.

Signed: January 9, 2008

Carl Horn, III
United States Magistrate Judge



[2] In the event that the Defendant has not produced the Plaintiff's personnel file, it shall produce that as well.