# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:06CV512-H

| | |
|---|---|
| **GERARD ECKHARDT,** | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )    **MEMORANDUM AND ORDER** |
| **BANK OF AMERICA, N.A.,** | )<br>)<br>) |
| Defendant. | )<br>) |

**THIS MATTER** is before the Court on the "Defendant's Motion to Compel" (document #27) and "Memorandum in Support . . ." (document #28), both filed January 28, 2008. The Plaintiff filed his ". . . Response . . ." (document #31) February 14, 2008. On February 29, 2008, the Defendant filed its ". . . Reply . . ." (document #36).

The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and this motion is now ripe for disposition.

Having fully considered the arguments, the record, and the applicable authority, the Court will <u>deny</u> the Defendant's Motion, as discussed below.

## I. FACTUAL AND PROCEDURAL HISTORY

This is an action seeking damages and declaratory relief for disability discrimination in violation of the Americans with Disabilities Act ("the ADA") 42 U.S.C. § 12112, <u>et. seq.</u>, and state common law and public policy. The Plaintiff, Gerard Eckhardt, is a Charlotte, North Carolina resident, who following a 1979 automobile accident became a quadriplegic who is confined to a wheel chair. The Defendant, Bank of America, N.A., is a Delaware corporation doing business in

North Carolina.

Accepting the allegations of the Complaint as true, in November 1996, the Defendant hired the Plaintiff as a Programmer Analyst. During his tenure with the Defendant, the Plaintiff never received a disciplinary notice, but rather, consistently received favorable reviews, raises, and bonuses.

Sometime in the fourth quarter of 2000, the Plaintiff was promoted to "Team Leader Application Programming," where he supervised four employees in the Global Business Financial Services Department ("the Development Team"), a small unit consisting of only 12 individuals.

In February 2004, one of the Defendant's Project Managers, Jon Dowell, promoted Lisa Terranova to Application Manager and removed the Plaintiff's team lead responsibilities. The Plaintiff alleges that he was demoted at that time to the position of Consultant Applications Programmer, a position roughly parallel to those held by his former subordinates.

The Plaintiff also alleges that despite performing his new position well, on June 29, 2005, he was informed him that the position was being eliminated as part of a cost reduction.

On August 31, 2005, the Plaintiff filed an internal administrative grievance, which was denied, and was terminated on that date or shortly thereafter.

The Plaintiff alleges that the only other member of the Development Team included in the lay-off, Jeff Sparks, who is not disabled, was allowed a 90-day period to locate a new position within the Bank and was re-hired.

The Defendant does not dispute that the Plaintiff filed a timely administrative charge with the Equal Employment Opportunity Commission ("EEOC"), contending that the lay-off was actually a discriminatory discharge based on his disability or the Defendant's perception of his disability.

The Plaintiff contends that in response to his EEOC charge and despite the fact he had been demoted from a team lead position more than a year earlier, the Defendant stated that the Plaintiff was laid off as part of the consolidation of three team lead positions on the Development Team into one team lead position.

On October 6, 2006, and after receiving what is commonly referred to as a "right to sue" letter from the EEOC, the Plaintiff timely filed his Complaint in the Superior Court of Mecklenburg County, alleging claims for wrongful termination in violation of the ADA and North Carolina public policy, as well as a common law claim for negligent infliction of emotional distress.

On December 15, 2006, the Defendant removed the state action to federal court alleging federal question jurisdiction. Said removal has not been challenged and appears proper.

The instant dispute pertains to discovery regarding the Plaintiff's emotional distress claims. On or about March 21, 2007, the Defendant served the following document requests:

> 3. All documents that refer to, relate to, discuss, describe or support plaintiff's claim for damages.
>
> 6. All diaries, calendars, appointment books, or other logs of dates and/or events that you have maintained since January 1, 2003.

During the deposition of the Plaintiff's mental health counselor, Brenda Ricketts, LPC, the Defendant learned that Ms. Ricketts had instructed the Plaintiff to maintain a journal chronicling his thoughts and feelings. The Plaintiff never identified this journal in his discovery responses, and when asked to produce it after Ms. Ricketts' deposition, he declined, contending through counsel that Document Request #6 did not "reasonably encompass[] therapeutic 'journaling' of the type referenced" by Ms. Ricketts. He also contended that the Defendant's discovery request was "otherwise objectionable," albeit without providing further detail on this point.

In his Response to the subject Motion, the Plaintiff explains that he has not "maintained" or "kept" a journal. While the Plaintiff concedes that he keyed contemporary thoughts and feelings into his computer as directed by his therapist, he also followed her instruction not to save or otherwise preserve them. According to an affidavit submitted by Ms. Ricketts, she advised the Plaintiff not to save any of the entries as "[i]t would have been counterproductive for him to save or otherwise keep everything he wrote because the express purpose of journaling was for him to expel the emotions and hurt, not to revisit the journal or create a historical account."

The Defendant's Motion has been fully briefed as set forth above and is therefore ripe for disposition.

## II. DISCUSSION

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides generally that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. *For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).*

Fed. R. Civ. P. 26(b)(1) (emphasis in original). The rules of discovery are to be accorded broad and liberal construction. See Herbert v. Lando, 441 U.S. 153, 177 (1979); and Hickman v. Taylor, 329 U.S. 495, 507 (1947). However, a litigant is not entitled to conduct discovery that is intended to annoy, embarrass, or oppress the opposing party. See Fed. R. Civ. P. 26(c).

Whether to grant or deny a motion to compel is generally left within the district court's broad discretion. See, e.g., Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929

(4th Cir. 1995) (district courts' rulings on discovery motions reviewed on appeal for abuse of discretion); Erdmann v. Preferred Research Inc., 852 F.2d 788, 792 (4th Cir. 1988) (noting district court's substantial discretion in resolving motions to compel); and LaRouche v. National Broadcasting Co., 780 F.2d 1134, 1139 (4th Cir. 1986) (same).

The Defendant contends that it should be awarded fees incurred in filing the subject Motion, arguing that the Plaintiff did not timely inform it that he had not saved the subject journal entries, and that the Plaintiff's emotional distress claims should be dismissed because relevant evidence has been "destroyed." The Court is unpersuaded, however, concluding to the contrary that the primary therapeutic benefit of the Plaintiff's journaling, as envisioned and recommended by his therapist, was to "expel the emotions and hurt" in private, and further, finding credible the therapist's explanation why saving the entries would run counter to this purpose. To hold that the Plaintiff should have refused this reasonable, and limited,[1] advice (not to save his entries) would effectively require *the Court* to substitute its opinion regarding the Plaintiff's treatment for that of the trained therapist who actually treated him. The Court also notes that the Defendant has deposed the Plaintiff about these thoughts and feelings, deposed the Plaintiff's therapist (Ms. Ricketts), and psychological expert (Dr. Stephen Bondy), examined the Plaintiff with its own expert (Dr. Pamela Wright-Etter), and has been given a release to obtain the Plaintiff's medical records.

Accordingly, the Defendant's Motion to Compel will be denied.

---

[1] This holding is limited to the unique facts before the Court. Here, the Plaintiff has provided the Defendant with ample discovery regarding his mental state, and the Court is convinced that the Plaintiff did not delete these entries to keep them from the Defendant. Generally, however, a plaintiff cannot escape discovery requirements simply because his therapist has advised him otherwise.

## III. ORDER

**NOW, THEREFORE, IT IS ORDERED:**

1. The "Defendant's Motion to Compel" (document #27) is **DENIED**.

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED**.

Signed: March 3, 2008

*Carl Horn, III*

Carl Horn, III
United States Magistrate Judge