# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:06CV512-H

| | |
|---|---|
| **GERARD ECKHARDT,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )  **MEMORANDUM AND ORDER** |
| | ) |
| **BANK OF AMERICA, N.A.,** | ) |
| | ) |
| **Defendant.** | ) |

**THIS MATTER** is before the Court on the "Plaintiff's Consolidated Motion and Brief in Support for Discovery Sanctions, Additional Discovery and Dismissal without Prejudice of Defendant's Motion for Summary Judgment" (document #38) filed March 18, 2008. The Defendant filed its ". . . Memorandum of Law in Opposition . . ." (document #39) April 4, 2008. On April 23, 2008, the Plaintiff filed his ". . . Reply . . ." (document #42). In addition, on April 29, 2008, the undersigned held a status conference regarding the subject Motion.

The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and this motion is now ripe for disposition.

Having fully considered the arguments, the record, and the applicable authority, the Court will <u>grant in part</u> and <u>deny in part</u> the Plaintiff's Motion, as discussed below.

## I. FACTUAL AND PROCEDURAL HISTORY

This is an action seeking damages and declaratory relief for disability discrimination in violation of the Americans with Disabilities Act ("the ADA") 42 U.S.C. § 12112, <u>et. seq.</u>, and state common law and public policy. The Plaintiff, Gerard Eckhardt, is a Charlotte, North Carolina

resident who, following a 1979 automobile accident, became a quadriplegic confined to a wheel chair. The Defendant, Bank of America, N.A., is a Delaware corporation doing business in North Carolina.

Accepting the allegations of the Complaint as true, in November 1996, the Defendant hired the Plaintiff as a Programmer Analyst. During his tenure with the Defendant, the Plaintiff never received a disciplinary notice, but rather, consistently received favorable reviews, raises, and bonuses.

Sometime in the fourth quarter of 2000, the Plaintiff was promoted to "Team Leader Application Programming," where he supervised four employees in the Global Business Financial Services Department ("the Development Team"), a small unit consisting of only 12 individuals.

In February 2004, however, one of the Defendant's Project Managers, Jon Dowell, promoted Lisa Terranova to Application Manager and removed the Plaintiff's team lead responsibilities. The Plaintiff alleges that he was effectively demoted at that time to the position of Consultant Applications Programmer, a position roughly parallel to those held by Yolanda Gammon and Walter Terry, his former subordinates.

The Plaintiff contends that according to an organizational chart produced by the Defendant, following Ms. Terranova's promotion and his demotion, the overall manager of the Development Team was Mary Ellen Statland, a Senior Technology Manager, who directly supervised four Project Managers: Tom Anderson, Troy Burgessor, Michelle Krause and Jon Dowell. As Application Manager, Ms. Terranova reported to Ms. Krause. According to the chart, Ms. Terranova in turn had six individuals reporting to her: the Plaintiff, Jeffrey Sparks, Robin Siegner, Les Dailey, Yolanda Gammon, and Walter Terry.

The Plaintiff also alleges that despite performing his new position well, on June 29, 2005, he was summoned to a meeting with Ms. Krause and Ms. Statland, who informed him that his job was being eliminated as part of a larger cost reduction.

The Plaintiff contends that Ms. Statland opined at this meeting that a recent software release had taken a "physical toll on [the Plaintiff]," noted that "[the Plaintiff] had some recent health issues," and suggested that the elimination of his current position would "allow [the Plaintiff] to find something less demanding such as a business analyst position." "Complaint" at 7 (document 1-2). Ms. Statland also informed the Plaintiff that he would receive a severance package, that he could apply for other positions with the Defendant, and that he would have 60 days to find a new position. The Plaintiff alleges that other members of the Development Team, Mr. Burgessor, Ms. Siegner, Ms. Gammon and Mr. Terry, had "performance and/or disciplinary problems" and were, therefore, more suitable candidates for a layoff.

Concerning Mr. Burgessor, Ms. Krause testified at her deposition that she "honestly did not get a lot out of [him]" and it is undisputed that Mr. Burgessor was removed from the Development Team within a few weeks of the elimination of the Plaintiff's position. Mr. Burgessor's former position was not eliminated, however, and the Plaintiff alleges that he was qualified for that position.

On August 31, 2005, the Plaintiff filed an internal administrative grievance, which was denied, and was terminated on that date or shortly thereafter.

The Plaintiff alleges that the only other member of the Development Team included in the layoff, Jeff Sparks, who is not disabled, was given 90 days (rather than 60) to locate a new position and was, in fact, re-hired.

The Defendant does not dispute that the Plaintiff filed a timely administrative charge with

the Equal Employment Opportunity Commission ("EEOC"), contending that the layoff was actually a discriminatory discharge based on his disability or the Defendant's perception of his disability. The Plaintiff contends that in response to his EEOC charge and despite the fact he had been demoted from a team lead position more than a year earlier, the Defendant stated that the Plaintiff was laid off as part of the consolidation of three team lead positions on the Development Team into one team lead position.

On October 6, 2006, and after receiving what is commonly referred to as a "right to sue" letter from the EEOC, the Plaintiff timely filed his Complaint in the Superior Court of Mecklenburg County, alleging claims for wrongful termination in violation of the ADA and North Carolina public policy, as well as a common law claim for negligent infliction of emotional distress.

On December 15, 2006, the Defendant removed the state action to this Court alleging federal question jurisdiction. Removal has not been challenged and appears proper.

The instant dispute pertains to the Plaintiff's assertion that the Defendant has failed to abide by the Court's January 9, 2008 Order. The Order, in relevant part, requires the Defendant:

> to certify that it has thoroughly searched for all documents responsive to Interrogatory 17 and Document Requests 7-9, 20, 22 and 34, and to identify any documents or sets of documents (for example, "responsive documents that were located on the hard drive of the computer used by Employee X") that were deleted, erased, or otherwise destroyed. Although the Court will not require the Defendant, at this point in the proceeding, to resort to expensive restoration of backup media, the Defendant must further certify what otherwise responsive but not readily ascertainable documents might be retained in archive form, on backup tapes/discs, or on any other backup media.

First, the Plaintiff argues that the Defendant has not produced or accounted for documents relating to behavioral and performance problems with three of his former teammates (Walter Terry, Yolanda Gammon, and Robin Siegner) who were also candidates for layoff. The Defendant

4

responds to this concern by stating that it has produced all such documents in its possession and "has informed the Plaintiff multiple times that it is currently unaware of the location of additional documents related to discipline or how they became unavailable."

The Plaintiff also seeks documents relating to or considered in the layoff deliberation process, complaining that he has only received documents generated <u>after</u> the layoff decision was made. Specifically, the Plaintiff seeks time sheets relied upon by Ms. Statland in the layoff deliberation process, five months of which have since been produced. The Plaintiff, however, seeks <u>all</u> of the time sheets for the period during which he served on the Development Team.

The Plaintiff also seeks any financial documents relied upon by Ms. Krause in determining which position should be terminated. The Defendant responds that Ms. Krause's deposition testimony was that there was no "box of documents," but rather that she had reviewed multiple areas of performance to reach her decision. The Plaintiff replies that insofar as Ms. Krause had reviewed documents, they should have been produced. Similarly, the Plaintiff seeks any documents reviewed by Daniel Globerson, Department Head of the Risk Technology Group, prior to making the ultimate decision to terminate the Plaintiff – although the Defendant contends that Mr. Globerson testified that he could not recall reviewing documents, relying instead on discussions with his direct reports.

The last category of documents at issue are the organizational charts which would explain the roles and titles of the Plaintiff's teammates. The Plaintiff has only received two organizational charts during discovery (both from 2005), and continues to seek organizational charts for the remainder of the period he served on the Development Team. The Defendant responds that it does not have any organizational charts <u>at the time</u> the layoff decision was made. It is not clear from the Defendant's response, however, whether organizational charts from times other than when the layoff

5

decision was made are still available.

Next, the Plaintiff argues that the Defendant has not fully complied with the provision of the January 9, 2008 Order requiring it to "fully identify the computers used by its decision makers in the Plaintiff's termination." Essentially, the Plaintiff is not satisfied with the Defendant's responses that: (1) it no longer possesses Ms. Krause's computer; and (2) it does possess Mr. Globerson's computer, but the hard drive was "wiped clean" before it was reissued. In response, the Defendant states that it has "demonstrated that all documents identified by these individuals had already been produced, or were not on their computers." The Defendant also argues that the "plaintiff provides no support that any of these individuals had documents on their computers that are relevant to this matter that have not been produced."

The Plaintiff also argues that the Defendant has not fully identified all of the individuals who worked on the Development Team with the Plaintiff – only providing the last known address for former employees (not their telephone numbers) and only the city where current employees work. The Defendant has now produced the requested information for former employees, but, for current employees, argues that these employees may be contacted through defense counsel. The Plaintiff replies that defense counsel has "no right to witness or observe Plaintiff's attempted communications with current non-managerial employees, or to know whom Plaintiff is calling or not calling," and continues to seek contact information for current employees.

Finally, the Plaintiff argues that the Defendant failed to certify, as required by the January 9, 2008 Order, that it thoroughly searched for all documents, contending that one of the Defendant's employees (rather than defense counsel) should have signed the required certification. The Defendant responds that it did make the required certification, albeit through counsel.

The Plaintiff seeks to have all of the above information and documents produced within seven (7) days of this Order, and to have the Defendant pay his costs for the subject Motion and the Motion resulting in the January 9, 2008 Order. The Plaintiff also seeks an additional ninety (90) days of discovery to supplement discovery and to seek new discovery on the issue of whether he is entitled to an adverse inference instruction based on the willful concealment or destruction of documents.

The Plaintiff's Motion has been fully briefed as set forth above and is therefore ripe for disposition.

## II. <u>DISCUSSION</u>

The subject Motion seeks sanctions and additional discovery for the Defendant's alleged failure to comply with this Court's January 9, 2008 Order. Rule 37(b) of the Federal Rules of Civil Procedure provides:

> (b) Failure to Comply with a Court Order.
>
> . . .
>
> (2) Sanctions in the District Where the Action Is Pending.
>
> > (A) *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent – or a witness under Rule 30(b)(6) or 31(a)(4) – fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
> > >
> > > (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b) (emphasis in original). The Fourth Circuit has developed the following four-part test for a district court to use when determining what sanctions to impose under Rule 37: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." Anderson v. Found. for Advancement, Educ. and Employment of Am. Indians, 155 F.3d 500, 504 (4th Cir. 1998).

The power to impose sanctions under Rule 37(b) is within the trial court's broad discretion. See Wilson v. Volkswagen of America, Inc., 561 F.2d 494, 504 (4th Cir. 1977). "It is not, however, a discretion without bounds or limits but one to be exercised discreetly and never when it has been established that failure to comply has been due to inability, and not to wilfulness, bad faith, or any fault of (the non-complying party)." Id. (internal quotations and citations omitted).

It is also well settled that a party has a duty to preserve evidence when the party is placed on

notice that the evidence is relevant to the litigation or when the party should have known that the evidence may be relevant to future litigation. Silvestri v. GMC, 271 F. 3d 583, 591 (4th Cir. 2001). The duty to preserve encompasses electronic communications and documents, such as emails, and documents created by computer, such as invoices. See Zubulake v. UBS Warburg, LLC, 220 F.R.D. 212, 217-18 (S.D.N.Y. 2003) (holding in employment discrimination case that defendant company had duty to preserve emails related to claims asserted by plaintiff, and ultimately requiring defendant to restore 77 backup disks in order to search for and produce those emails). In other words, "once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place 'a litigation hold' to ensure the preservation of relevant documents." Zubulake, 220 F.R.D. at 218. Accord Thompson v. United States Dept. of Housing and Urban Development, 219 F.R.D. 93, 100 (D. Md. 2003) (in that party had duty not to delete responsive emails, discovery requests for deleted emails were proper).

Applying the law to the facts of this case, it is evident that relevant documents, the existence of which have been established through deposition testimony, have not been produced. However, it is not clear that failure to produce these documents was due to the Defendant's (or defense counsels') bad faith. To the contrary it is more likely that the discovery problems in this relatively straightforward case simply highlights the changing face of discovery in an electronic world. Nevertheless, the Court having been convinced that discoverable documents exist which have not been produced, the Plaintiff will be allowed both to seek these documents from back-up tapes of electronically stored material, and to corroborate the substance of any missing documents from witnesses where the documents themselves cannot be recovered.

On the other hand, the Court having not been convinced of bad faith on the part of either

defense counsel or the Defendant, <u>at this time</u> it does not appear that an adverse inference instruction or the imposition of sanctions would be appropriate. However, Plaintiff's counsel will be permitted to argue in favor of such an inference and if further discovery reveals willful concealment or destruction of documents, the Court will revisit whether an adverse inference instruction should be given and/or whether costs or other sanctions should be imposed.

### III. RESOLUTION OF OUTSTANDING DISCOVERY ISSUES

First, the Defendant is ordered to question current employees who may potentially have responsive documents <u>and</u> to perform key word searches of the relevant employees' computers (where still available) within twenty-one (21) days of this Order, in search of the following documents:

(1)  documents relating to the discipline of Walter Terry, Yolanda Gammon, and Robin Siegner;

(2)  documents relating to or considered in the layoff process, including

  (a)  the time sheets for Development Team members from January 1, 2000 to August 31, 2005,

  (b)  documents reflecting the monthly financial information reviewed by Ms. Krause, and

  (c)  documents referred to by Mr. Globerson, such as documents regarding demand for work being performed, such as project plans, budget requests or budget roll-ups of projects proposed or in flight;[1] and

(3)  all organizational charts relating to the Development Team during the Plaintiff's tenure on the Team.

The next category of disputed discovery relates to the restoration of back-up tapes of the

---

[1] The Defendant has already produced the documents showing head counts sought by the Plaintiff.

computers of the three relevant decision makers in the layoff – Ms. Statland, Ms. Krause, and Mr. Globerson. To the extent the above documents are not located through traditional means of discovery inquiry, the Defendant will be required, at its expense, to perform a key word search of the back-up tapes for the computers of these three individuals to recover documents relating to discipline of Mr. Terry, Ms. Gammon, and Ms. Siegner, as well as any documents relevant to the subject layoff decision (including documents reviewed by the decision makers in connection with the layoff).

However, while the Defendant is encouraged to begin this process immediately, the Court is mindful that the cost of restoration and a key word search of back-up tapes has not been previously addressed by the parties. Should the Defendant begin this process and conclude that the cost is highly disproportionate to the value of the documents which may be recovered (considering that the Plaintiff already has much of the information expected to be located, although perhaps not the best evidence of this information), it may seek the Court's guidance on how to proceed. In addition, the Plaintiff will be allowed to conduct a Rule 30(b)(6) deposition of an employee with knowledge of the Defendant's back-up system, and the Defendant may, if necessary, wait for the completion of this deposition to begin the back-up restoration process. In any event, the Defendant must either produce documents located during the back-up tape search or seek leave of the Court concerning the burden of production within fourteen (14) days of the Rule 30(b)(6) deposition. The Court reiterates that the Defendant is only required to search for documents (including e-mails) stored on the back-up tapes of the computers of Ms. Statland, Ms. Krause, and Mr. Gammon.

Next, the Plaintiff complains that the Defendant did not fully comply with the Court's January 9, 2008 Order by providing only the city where current employees work and not their contact

information. The Court agrees that these employees, who may or may not be designated as "officers," should be contacted through defense counsel. While this may allow the Defendant to contact these employees before hearing from Plaintiff's counsel, the Court is confident that defense counsel will follow the ethical practice of reminding the employees of their duty to provide truthful answers to opposing counsel's questions.

The Plaintiff also complains that defense counsel, and not a corporate representative of the Defendant, signed the required certification that there had been a thorough search for all responsive documents. However, in that defense counsel are officers of the Court and it is routine for counsel to speak for and bind their clients, and given the additional inquiry and search required herein, this is not deemed an issue on which it is necessary for the Court to take further action.

Finally, because of unaccounted for documents and the late production of other documents, the Plaintiff seeks additional discovery, some of which will be allowed. To permit this additional discovery, the discovery period will be extended through August 7, 2008. Furthermore, although the Court has not found additional sanctions to be warranted <u>at this time</u>, the Defendant will be required to pay the costs of making all of its current and former employee deponents available in Charlotte, North Carolina. Aside from this, the parties will bear their own ordinary and usual costs.

First, as noted above, the Plaintiff may take a Rule 30(b)(6) deposition of an employee with knowledge of the Defendant's computer back-up system (or systems).[2] This employee shall be

---

[2]The Plaintiff also seeks a Rule 30(b)(6) deposition of a corporate representative who could testify regarding the usual practices and procedures for storing discipline documents and how the Advice and Counsel system works. However, it is clear from the Plaintiff's Brief in Support of the subject Motion that he has garnered ample testimony and other information on these matters. The Plaintiff also seeks to take depositions related to Fidelity Investments Institutional Services Company – a company assisting the Defendant in its Human Resources functions. Fidelity Investments appears to have aided in the Advice and Counsel function; the Plaintiff has subpoenaed relevant records from Fidelity Investments and the Court declines to order yet another deposition at this late stage of the proceedings.

identified and made available for deposition within thirty (30) days of this Order.

In addition, the Plaintiff will be permitted to redepose Ms. Terranova, Ms. Statland, and Ms. Krause. Each deposition will be for no longer than two hours, and the subject matter shall be limited to questions relating to documents produced after each of their respective depositions and to new information which may come to light in response to those questions. The Plaintiff will not be allowed to conduct another deposition of Mr. Globerson on the issue of whether he financially benefitted from the Plaintiff's layoff as that topic has been amply addressed.

The next four depositions are conditionally allowed, and should not be conducted, if at all, until after the Defendant produces any documents found through the back-up tape search.[3] Each of the following depositions are being permitted to fill in voids created by missing documents; should these documents be located, it follows that some or all of these depositions may no longer be necessary.

Assuming the relevant documents are not found, the Plaintiff will also be allowed to depose both Mr. Terry and Ms. Gammon. These depositions will likewise be limited to two hours, and the subject matter shall be limited to any discipline they received and documents pertaining thereto.

The Plaintiff will also be allowed to depose Mary Rankin, a human resources official who was involved administratively in the layoff and advised Mr. Globerson regarding the layoff process. Her deposition shall be limited to her involvement in the subject layoff and her knowledge of discipline and related documents relevant to Mr. Terry, Ms. Gammon, and Ms. Siegner.

---

[3]According to the Court's timeline, the Defendant should have produced documents from the back-up tapes, or sought leave of Court to avoid the burden of this production, about half way through the additional three months of discovery. Thus, it would be prudent for the parties to begin immediately in scheduling these depositions for the second half of this discovery period, with the obvious contingency that the depositions will be cancelled if the relevant documents are located.

The Plaintiff will be allowed to depose Elisa Bain, an Employee Relations Case Manager who was involved in investigating the Plaintiff's EEOC charge. This deposition will be limited to Ms. Bain's knowledge of the missing documents discussed above and her knowledge of the Defendant's efforts to preserve those documents.

The Plaintiff may also submit up to fifteen (15) additional interrogatories and fifteen (15) additional requests for admission, however, the Plaintiff has not convinced the Court that additional document requests are necessary, and therefore his request in this regard will be denied.

### IV. <u>ORDER</u>

**NOW, THEREFORE, IT IS ORDERED:**

1. The "Plaintiff's Consolidated Motion and Brief in Support for Discovery Sanctions, Additional Discovery and Dismissal without Prejudice of Defendant's Motion for Summary Judgment" (document #38) is **GRANTED IN PART** and **DENIED IN PART** as set forth above.

2. The Pretrial Order and Case Management Plan is amended as follows: (1) all discovery shall be completed on or before **August 7, 2008**; and (2) all motions except motions in limine and motions to continue shall be filed on or before **September 7, 2008**.

3. The Defendant may decide whether to supplement its ". . . Motion for Summary Judgment" (document #32) or to withdraw and refile it after the close of discovery. In either event supplementation or an amended motion must be filed by the Defendant on or before the dispositive motions deadline (September 7, 2008).

4. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED.**

Signed: May 6, 2008

*Carl Horn, III*

Carl Horn, III
United States Magistrate Judge